THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

**RECEIVED**

DEC 12 2025

U.S. DISTRICT COURT
GREENVILLE, S.C.

C A No. _____

| | |
|---|---|
| WENDELL COOPER <br><br> Plaintiff, <br> v. <br><br> M&T BANK CORPORATION and <br> UNITED STATES DEPARTMENT <br> OF AGRICULTURE Rural Development <br> Single Family Housing Guaranteed Loan Program <br><br> Defendant. | COMPLAINT FOR VIOLATIONS <br> OF THE REAL ESTATE <br> SETTLEMENT PROCEDURES ACT <br> 12 U S C section 2605 <br> REGULATION X 12 C F R section <br> 1024.41 USDA SERVICING <br> REGULATIONS 7 C F R section <br> 3555.307 AND THE <br> ADMINISTRATIVE PROCEDURE <br> ACT 5 U S C section 706 |

COMPLAINT FOR VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES
ACT 12 U.S.C. § 2605, REGULATION X 12 C.F.R. § 1024.41, USDA SERVICING
REGULATIONS 7 C.F.R. § 3555.307, AND THE ADMINISTRATIVE PROCEDURE ACT 5
U.S.C. § 706

## I. INTRODUCTION

1. This civil action arises from M&T Bank's failure to comply with federal mortgage-servicing rules while handling Plaintiff's USDA-guaranteed loan after Hurricane Helene. Plaintiff submitted a complete loss-mitigation application. M&T Bank refused to evaluate it as required under Regulation X, the Real Estate Settlement Procedures Act, and mandatory USDA rules. Plaintiff seeks relief for these violations and for USDA Rural Development's failure to enforce federal servicing obligations as required under the Administrative Procedure Act.

## II. JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law including Regulation X, RESPA, USDA servicing regulations, and the Administrative Procedure Act.

3. Venue is proper in the District of South Carolina, Greenville Division, because the property at issue is located in this District and the acts giving rise to the complaint occurred here.

1

## III. PARTIES

4. Plaintiff Wendell D. Cooper resides in Greenville County, South Carolina, and is the borrower on a USDA-guaranteed residential mortgage loan serviced by M&T Bank.

5. Defendant M&T Bank Corporation is a mortgage servicer subject to Regulation X, RESPA, and USDA servicing rules and regularly conducts business in South Carolina.

6. Defendant United States Department of Agriculture ("USDA") oversees the Single-Family Housing Guaranteed Loan Program and is responsible for supervising servicer compliance with mandatory federal servicing obligations.

## IV. STATEMENT OF FACTS

6. Plaintiff received a USDA guaranteed mortgage loan for his primary residence located in Greenville County, South Carolina. The loan is serviced by M&T Bank Corporation which is required to follow federal servicing rules including Regulation X, RESPA, and USDA loss mitigation procedures, and as documented in Plaintiff's uploaded financial submissions M&T Bank was required to evaluate all verified income sources including Social Security income, PEBA retirement income, and business income reflected in Plaintiff's bank statements and Borrower Financial Reports. However, Plaintiff's loss-mitigation application was not based on business income; it was based on verified Social Security and PEBA retirement income, which constitute the stable qualifying income under USDA guidelines. On September 19, 2025, M&T Bank acknowledged in writing that Plaintiff qualified for loss-mitigation review and confirmed receipt of the required documents. M&T Bank is further required under 7 C.F.R. § 3555.307 and USDA Handbook HB-1-3555 Chapter 18 to review Plaintiff for natural-disaster relief following Hurricane Helene, to calculate Plaintiff's lawful payment-to-income ratio including the mandated 31 percent USDA standard, and to refrain from foreclosure or collection activity while a complete loss-mitigation application is pending.

7. M&T Bank failed to evaluate Plaintiff under the required USDA disaster-relief waterfall despite Plaintiff's eligibility under 7 C.F.R. § 3555.307 and USDA Handbook HB-1-3555 Chapter 18. Federal guidelines required M&T Bank to evaluate Plaintiff for all available relief options following Hurricane Helene, including interest-rate reduction, term extension, and a Mortgage Recovery Advance. On September 19, 2025, M&T Bank acknowledged receipt of Plaintiff's complete financial package and his eligibility for loss-mitigation review, triggering the servicer's duty to complete the USDA disaster-relief waterfall. On October 7, 2025, M&T Bank again confirmed receipt of the full financial package. Despite these written acknowledgments, M&T Bank failed to perform any USDA-mandated waterfall evaluation. This failure violated 7 C.F.R. § 3555.307 and HB-1-3555 Chapter 18 and prevented Plaintiff from receiving the disaster-relief options guaranteed under federal law.

8. M&T Bank failed to evaluate Plaintiff's complete loss-mitigation application within the thirty-day period required by 12 C.F.R. § 1024.41. M&T Bank issued a written acknowledgment on September 19, 2025, confirming that Plaintiff's application was received, complete, and under active review, which triggered the federal thirty-day deadline. Instead of issuing a timely determination, M&T Bank stalled the process, including through its October 7, 2025, correspondence demanding documents Plaintiff had already submitted. M&T Bank then issued a delinquency notice stating that Plaintiff was more than 230 days past due while his complete application remained pending, conduct expressly prohibited under Regulation X and USDA servicing rules because servicers may not pursue foreclosure-related activity during an active review. M&T Bank's issuance of the October 27, 2025 "Notice of Incomplete Application" further contradicted the September 19, 2025, acknowledgement and was used to improperly extend the review period. Plaintiff sent multiple certified letters disputing these actions and confirming that his loss-mitigation application remained active and complete, but M&T Bank failed to correct its violations or issue a required decision.

9. Plaintiff's loss mitigation package was complete and timely submitted, and M&T Bank nevertheless issued repeated and contradictory document demands designed to delay review. Plaintiff submitted his full Borrower Financial Report and supporting documents on September 17, 2025, including bank statements, Social Security income verification, PEBA retirement verification, and a signed IRS Form 4506-C authorizing M&T Bank to obtain his tax transcripts directly. Plaintiff immediately supplemented and confirmed receipt of these documents by email on September 23, 2025, and September 24, 2025. Despite having all required information, M&T Bank issued a letter dated October 7, 2025, resetting the package and demanding documents already provided, including bank statements, income verification, and forms previously submitted. M&T Bank then issued a second contradictory Notice of Incomplete Application on October 27, 2025, demanding nine items, many of which had already been submitted, and falsely asserting that Plaintiff's application was incomplete. The October 27 notice also demanded full personal bank-account statements that exceed the documentation requirements permitted under USDA HB-1-3555 Chapter 18 and Regulation X. These duplicative, escalating, and contradictory requests demonstrate a pattern of delay and noncompliance by M&T Bank in violation of 12 C.F.R. § 1024.41(b)(2)(i) and USDA disaster-relief procedures.

10. While Plaintiff's complete loss mitigation application was pending review, M&T Bank engaged in prohibited dual tracking by issuing delinquency and foreclosure-related notices even after acknowledging that Plaintiff qualified for mitigation review. After receiving Plaintiff's submissions on September 17, 2025, as well as supplemental confirmations on September 23 and 24, 2025, M&T Bank was prohibited under 12 C.F.R. § 1024.41(f)–(g) from initiating or advancing foreclosure activity. Nevertheless, M&T Bank issued statements claiming Plaintiff was more than 230 days past due and at risk of foreclosure despite Plaintiff's good-faith payments and active federal review protections. These notices contradicted M&T Bank's September 19 acknowledgment letter confirming Plaintiff's qualification for mitigation review and violated USDA HB-1-3555 Chapter 18, which bars foreclosure actions during active disaster-related loss-mitigation evaluation.

3

The issuance of these inaccurate delinquency and foreclosure-threat communications materially harmed Plaintiff and demonstrates a deliberate pattern of unlawful servicing conduct.

11. M&T Bank falsely claimed that Plaintiff withdrew his loss-mitigation application even though Plaintiff never submitted any written statement withdrawing his request for review and continued to send documents and certified-mail communications confirming his intent to complete the process. This false withdrawal claim is contradicted by Plaintiff's September 17 submission, the supplemental documents transmitted on September 23 and 24, 2025, and Plaintiff's repeated written notices demanding proper evaluation. Under 12 C.F.R. § 1024.41(c)(2)(ii) and § 1024.41(e), a servicer may not treat an application as withdrawn unless the borrower expressly states in writing that they no longer wish to pursue review or fails to respond within the regulatory timeframe, neither of which occurred. M&T Bank's fabricated withdrawal assertion was used to delay mandatory USDA disaster-relief review under 7 C.F.R. § 3555.307 and to move Plaintiff closer to foreclosure in violation of federal servicing rules.

12. Plaintiff submitted every financial document that M&T Bank requested including Social Security and retirement income verifications and all required bank statements. Despite having a complete package, M&T Bank repeatedly issued duplicative requests for the same documents in violation of 12 C.F.R. § 1024.41(b)(2)(i), which prohibits requesting documents that the servicer already possesses. This pattern of repeat requests, combined with M&T Bank's continued delay, contributed to the prolonged review period and increased Plaintiff's arrears. Plaintiff's records show that M&T Bank issued a first duplicative document request on October 7, 2025, demanding bank statements, Social Security income verification, and retirement verification already provided. A second duplicative request followed on October 14, 2025, again demanding documents already submitted. These repeated requests demonstrate improper servicing conduct and materially delayed evaluation of Plaintiff's application.

13. Plaintiff never withdrew his loss-mitigation application, yet M&T Bank falsely claimed in a written notice dated September 19, 2025, that Plaintiff had withdrawn his application. Plaintiff immediately disputed this false assertion and on September 25, 2025, sent a certified rebuttal letter confirming that no withdrawal had ever been submitted. Plaintiff also sent a follow-up email on December 2, 2025, again disputing the false withdrawal claim and demanding correction of M&T Bank's records. Under USDA servicing rules, any withdrawal of a loss-mitigation application must be in writing from the borrower, and no such document exists. M&T Bank's misrepresentation violated 12 C.F.R. § 1024.41 because servicers are prohibited from inaccurately characterizing the status of a borrower's application or using false statements to delay review.

14. While Plaintiff's loss-mitigation application remained complete and pending review, M&T Bank issued delinquency notices and initiated foreclosure activity in violation of federal servicing rules. Under 12 C.F.R. § 1024.41(f), a servicer is prohibited from making any foreclosure referral, advancing foreclosure steps, or issuing foreclosure-

4

related threats when a complete loss-mitigation application is under review. Plaintiff had already submitted all required financial documents, yet M&T Bank continued to send escalating delinquency notices including statements asserting Plaintiff was more than 230 days delinquent. These actions violated Regulation X and USDA requirements and placed Plaintiff at risk of losing his home.

15. M&T Bank refused to calculate Plaintiff's lawful payment amount under the USDA disaster-relief modification guidelines, despite having all required financial information. Under 7 C.F.R. § 3555.307 and USDA Handbook HB-1-3555, servicers must determine the borrower's affordable payment based on 31 percent of verified gross monthly income. Plaintiff supplied all required income documentation, yet M&T Bank never performed the calculation or informed Plaintiff of the correct amount. This failure delayed Plaintiff's relief and contributed to improper servicing conduct.

16. M&T Bank repeatedly demanded documents and personal information not required under USDA loss-mitigation rules and used these improper demands to delay review. Under 12 C.F.R. § 1024.41(b)(2)(i), servicers may not require unnecessary documents. USDA regulations impose similar limits. Despite Plaintiff providing complete, fixed-income documentation, M&T Bank requested business records and unneeded bank information. These improper demands delayed review and obstructed Plaintiff's access to required disaster-relief protections.

17. M&T Bank failed to assign Plaintiff a consistent Single Point of Contact as required under 12 C.F.R. § 1024.40. Instead, Plaintiff received contradictory statements from multiple representatives about missing documents, application status, and review requirements. This lack of continuity hindered communication and delayed Plaintiff's review.

18. M&T Bank continued to pursue foreclosure activity while Plaintiff's complete loss-mitigation application was pending, even though federal law expressly prohibits dual-tracking. Plaintiff had already submitted all required documents and M&T Bank had acknowledged receipt of his complete package. Nevertheless, the Bank issued foreclosure-related communications and advanced foreclosure steps. These actions violated 12 C.F.R. § 1024.41(g) and USDA requirements.

19. M&T Bank failed to provide Plaintiff with the written decision letter required under federal law after submission of a complete loss-mitigation application. Under 12 C.F.R. § 1024.41(c), servicers must issue written notice of approval, denial, or need for additional information. Plaintiff received no such determination despite repeated requests. Instead, M&T Bank sent inconsistent statements and shifting explanations. The absence of a written determination violated RESPA and obstructed Plaintiff's rights.

20. M&T Bank also failed to comply with 12 C.F.R. § 1024.41(d), which requires a written notice stating the specific reasons for any denial. Plaintiff never received any written denial or explanation. The absence of any written determination prevented Plaintiff from appealing or correcting alleged deficiencies and constituted improper servicing conduct.

5

21. M&T Bank failed to escalate Plaintiff's loss-mitigation application to a supervisor when Plaintiff disputed errors, as required under 12 C.F.R. § 1024.35. Plaintiff submitted multiple notices of error identifying failures to evaluate his application, false withdrawal claims, and improper document demands. M&T Bank failed to investigate or correct errors.

22. USDA Rural Development failed to enforce M&T Bank's compliance with mandatory servicing obligations. USDA received Plaintiff's complaints detailing M&T's violations but failed to provide oversight, guidance, or enforcement. This inaction constitutes "agency action unlawfully withheld" under 5 U.S.C. § 706(1).

## COUNT I — AGENCY ACTION UNLAWFULLY WITHHELD
### Administrative Procedure Act, 5 U.S.C. § 706(1) (Against USDA Rural Development)

23. Plaintiff realleges and incorporates by reference Paragraphs 1 through 22 as if fully set forth herein.

24. USDA's obligations under 7 C.F.R. § 3555.307, 7 C.F.R. § 3555.301, and USDA Handbook HB-1-3555 are mandatory, not discretionary. The agency must ensure that servicers comply with federal loss-mitigation requirements, perform accurate evaluations, follow the mandated waterfall sequence, and issue timely written decisions. USDA's supervisory duties are conditions of its authority to guarantee these loans and cannot be ignored.

25. USDA unlawfully withheld agency action by failing to intervene despite receiving detailed evidence of M&T Bank's regulatory violations, including its failure to evaluate Plaintiff's complete application, failure to issue a written determination, issuance of false servicing statements, and repeated duplicative document demands.

26. USDA's failure to act constitutes "agency action unlawfully withheld or unreasonably delayed" within the meaning of 5 U.S.C. § 706(1). Under Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004), an agency must perform nondiscretionary duties imposed by statute or regulation. Here, USDA was required to ensure proper servicing under 7 C.F.R. § 3555.307 and HB-1-3555 Chapter 18 but failed to take any action for months despite Plaintiff's repeated written requests.

27. USDA's inaction is also unreasonable under the TRAC factors, which authorize judicial intervention when an agency's delay is egregious, causes substantial harm, or violates a statutory mandate. See Telecommunications Research & Action Center v. FCC, 750 F.2d 70 (D.C. Cir. 1984). Plaintiff repeatedly notified USDA of contradictory servicing statements, missing evaluations, and clear violations of federal law, yet the agency issued no determination, no guidance, and no corrective instruction to the servicer.

28. USDA's failure is not a matter of agency discretion. The governing regulations impose clear, nondiscretionary duties, and courts consistently hold that when an agency refuses to take a required action, such failure is reviewable and correctable under the APA. See

Norton v. SUWA, 542 U.S. 55 (2004) ("§ 706(1) applies where an agency fails to take a discrete action that it is required to take.").

29. USDA's unlawful inaction directly and foreseeably caused Plaintiff severe and compounding harm. Had USDA performed its nondiscretionary supervisory duties:

- Plaintiff would have received a timely and accurate loss-mitigation determination.

- Plaintiff would not have been driven deeper into delinquency through M&T Bank's continued violations.

- Plaintiff's creditworthiness, liquidity, and financial stability would not have deteriorated.

- Plaintiff would not be facing foreclosure based on uncorrected servicing errors.

USDA's inaction also forced Plaintiff to deplete retirement savings, liquidate investment assets, incur additional debt, and exhaust emergency reserves simply to keep the mortgage from collapsing under unlawful servicing conduct. These cumulative losses are the direct result of agency action "unlawfully withheld" under 5 U.S.C. § 706(1).

30. USDA's refusal to act eliminated Plaintiff's statutory protections and allowed M&T Bank to continue toward foreclosure while Plaintiff's complete application remained unprocessed. Such inaction is contrary to law and constitutes a clear violation of the Administrative Procedure Act.

**COUNT II — AGENCY ACTION UNLAWFULLY WITHHELD**
Administrative Procedure Act, 5 U.S.C. § 706(1) (Against USDA Rural Development)

31. Plaintiff realleges and incorporates by reference Paragraphs 1 through 30 as if fully set forth herein.

32. USDA's obligations under 7 C.F.R. § 3555.307, 7 C.F.R. § 3555.301, and USDA Handbook HB-1-3555 are mandatory, not discretionary. USDA must ensure that servicers comply with federal loss-mitigation requirements, perform accurate evaluations, follow the mandated waterfall sequence, and issue timely written decisions.

33. USDA unlawfully withheld agency action by failing to intervene despite receiving detailed evidence of M&T Bank's regulatory violations, including:

(a) failure to evaluate Plaintiff's complete loss-mitigation application.
(b) failure to issue the mandatory written determination.

(c) issuance of false and contradictory servicing statements.

(d) repeated duplicative and improper document demands.

7

34. USDA's failure to act constitutes "agency action unlawfully withheld or unreasonably delayed" within the meaning of 5 U.S.C. § 706(1). Under Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55 (2004), an agency must perform nondiscretionary duties imposed by statute or regulation. USDA failed to perform required supervisory duties for months despite Plaintiff's repeated written requests.

35. USDA's inaction is also unreasonable under the TRAC factors, which authorize judicial intervention when an agency's delay is egregious, causes substantial harm, or violates a statutory mandate. Plaintiff repeatedly notified USDA of contradictory servicing statements, missing evaluations, and clear violations of federal law, yet USDA issued no determination, no guidance, and no corrective instruction to the servicer.

36. USDA's failure is not discretionary. Binding federal regulations impose clear, nondiscretionary duties, and courts consistently hold that when an agency refuses to take a required action, such failure is reviewable and correctable under the APA. See Norton v. SUWA, 542 U.S. 55 (2004) ("§706(1) applies where an agency fails to take a discrete action that it is required to take.").

37. USDA's unlawful inaction directly and foreseeably caused Plaintiff severe and compounding harm, including:

    • Plaintiff would have received a timely and accurate loss-mitigation determination.

    • Plaintiff would not have been pushed deeper into delinquency due to M&T Bank's continuing violations.

    • Plaintiff's creditworthiness, liquidity, and overall financial stability would not have deteriorated.

    • Plaintiff would not be facing the risk of foreclosure based on inaccurate and uncorrected servicing records.

38. USDA's inaction forced Plaintiff to deplete retirement savings, liquidate investment assets, incur additional debt, and exhaust emergency reserves simply to keep his mortgage afloat during a period when federal protections should have applied.

39. USDA's refusal to act eliminated Plaintiff's statutory protections and allowed M&T Bank to continue toward foreclosure while Plaintiff's complete application remained unprocessed, contrary to law and in violation of the Administrative Procedure Act.

**COUNT III — VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)** 12 U.S.C. § 2605; 12 C.F.R. §§ 1024.40–1024.41 (Against M&T Bank Corporation)

40. Plaintiff realleges and incorporates by reference Paragraphs 1 through 39 as if fully set forth herein.

41. M&T Bank, as Plaintiff's mortgage servicer, is subject to the mandatory duties established by 12 U.S.C. § 2605 and Regulation X, including 12 C.F.R. §§ 1024.40–1024.41. These duties are nondiscretionary and require M&T Bank to:

    (a) provide continuity of contact through a trained, consistent Single Point of Contact.

    (b) accurately communicate the status of a borrower's loss-mitigation review.

    (c) maintain complete and truthful servicing records.

    (d) evaluate a complete application within the federal 30-day deadline.

    (e) issue a written determination stating approval, denial, or need for additional information.

    (f) refrain from dual-tracking or any foreclosure activity while a complete application is pending.

42. M&T Bank violated 12 C.F.R. § 1024.40 by failing to provide Plaintiff with a consistent and knowledgeable Single Point of Contact. Instead, Plaintiff received conflicting and materially inconsistent information from multiple representatives, including contradictory statements regarding whether documents were received, whether Plaintiff's application was complete, and the status of the loss-mitigation review.

43. M&T Bank further violated 12 C.F.R. § 1024.41 by falsely asserting that Plaintiff withdrew his loss-mitigation application. Federal law prohibits a servicer from treating an application as withdrawn without a written withdrawal from the borrower. Plaintiff never submitted any written withdrawal, and M&T Bank failed to correct its servicing records after Plaintiff disputed the false assertion.

44. M&T Bank violated 12 C.F.R. § 1024.41(c) by failing to issue the mandatory written determination on Plaintiff's complete application. Servicers must provide a written notice stating whether the borrower is approved, denied, or required to provide additional information. Plaintiff repeatedly requested this written determination, but none was ever issued.

45. M&T Bank further violated 12 C.F.R. § 1024.41(b)(2)(i) by issuing duplicative requests for documents already provided. Regulation X expressly prohibits repeated demands for documents a servicer already possesses.

46. M&T Bank's repeated failures—including false statements, inconsistent communications, lack of SPOC continuity, failure to issue a written decision, and issuance of duplicative requests—constitute a "pattern or practice of noncompliance" under 12 U.S.C. § 2605(f)(1)(B).

47. As a direct and foreseeable result of these violations, Plaintiff suffered actual damages within the meaning of 12 U.S.C. § 2605(f)(1)(A), including progression toward

foreclosure, increased delinquency caused solely by servicer delay, deterioration of credit, emotional distress, and substantial time and resources expended correcting M&T Bank's errors.

48. Plaintiff is entitled to recover actual damages, statutory damages for M&T Bank's pattern or practice of noncompliance, costs, and all additional relief the Court deems just and proper.

COUNT IV — VIOLATION OF USDA SERVICING REGULATIONS
7 C.F.R. § 3555.307; USDA Handbook HB-1-3555
(Against M&T Bank Corporation)

49. Plaintiff realleges and incorporates by reference Paragraphs 1 through 48 as if fully set forth herein.

50. Under 7 C.F.R. § 3555.307 and USDA Handbook HB-1-3555, Chapter 18, M&T Bank was required to perform a complete and accurate disaster-relief and loss-mitigation evaluation. These duties are mandatory, nondiscretionary, and apply immediately upon receipt of a complete application. Required actions include:

    (a) conducting the full USDA waterfall evaluation in the required order.

    (b) calculating Plaintiff's lawful modified housing payment at 31 percent of verified gross monthly income.

    (c) suspending all foreclosure activity and all foreclosure-related communications while a complete application remains pending.

    (d) maintaining accurate, consistent servicing records and providing truthful status information to the borrower; and

    (e) issuing a written determination identifying each evaluated option and the specific reasons for approval or denial.

51. Plaintiff submitted a complete loss-mitigation application on September 17, 2025. M&T Bank confirmed in writing on September 19, 2025, and again on October 7, 2025, that Plaintiff's application was complete and under active review. These written confirmations triggered all mandatory USDA servicing requirements.

52. Despite confirming completeness, M&T Bank failed to conduct the required waterfall evaluation, failed to calculate Plaintiff's 31-percent payment eligibility, and failed to review Plaintiff for any USDA disaster-relief or modification option. Each failure violated explicit federal servicing rules and deprived Plaintiff of relief available under the program.

53. After acknowledging completeness, M&T Bank issued duplicative requests for documents already submitted. These contradictory communications unlawfully delayed the review

10

process and violated USDA rules prohibiting the "resetting" of a complete application through repeat document demands.

54. M&T Bank engaged in prohibited dual-tracking by threatening foreclosure and demanding more than $9,000 while Plaintiff's complete application was under review. Such conduct violates 7 C.F.R. § 3555.307, USDA Handbook HB-1-3555, and the federal requirement that no foreclosure activity may proceed during active review.

55. M&T Bank failed to issue the mandatory written determination identifying the specific relief options evaluated and the reasons for any denial. This failure violated USDA's explicit written-notice requirements and prevented Plaintiff from understanding the basis of the servicer's actions or seeking timely appeal.

56. M&T Bank's conduct was not a clerical error or isolated oversight. Rather, it constituted a pattern of systemic noncompliance with mandatory federal servicing standards, including: contradictory statements about the completeness of the application, refusal to evaluate required options, unlawful foreclosure threats, and failure to issue the required written decision.

57. As a direct and foreseeable consequence of these violations, Plaintiff's delinquency increased, Plaintiff's credit deteriorated, Plaintiff incurred additional financial hardship, and Plaintiff was exposed to wrongful foreclosure during a period when federal law expressly prohibited any foreclosure activity.

58. Plaintiff is entitled to monetary damages, equitable relief, and an order compelling M&T Bank to comply with federal servicing requirements, correct all inaccurate servicing records, and remedy the harms caused by its violations of 7 C.F.R. § 3555.307 and USDA Handbook HB-1-3555.

## COUNT IV — VIOLATION OF USDA SERVICING REGULATIONS
## 7 C.F.R. § 3555.307; USDA Handbook HB-1-3555
## (Against M&T Bank Corporation)

59. Plaintiff realleges and incorporates by reference Paragraphs 1 through 58 as if fully set forth herein.

60. Under 7 C.F.R. § 3555.307 and USDA Handbook HB-1-3555, Chapter 18, M&T Bank was required to perform a complete and accurate disaster-relief and loss-mitigation evaluation. These duties are mandatory, nondiscretionary, and apply immediately upon receipt of a complete application. Required actions include:

(a) conducting the full USDA waterfall evaluation in the required sequence.

(b) calculating Plaintiff's lawful modified housing payment at 31 percent of verified gross monthly income.

    (c) suspending all foreclosure activity and foreclosure-related communications while a complete application remains pending.

    (d) maintaining accurate, consistent servicing records and providing truthful status information to the borrower; and

    (e) issuing a written determination identifying each evaluated option and the specific reasons for approval or denial.

61. Plaintiff submitted a complete loss-mitigation application on September 17, 2025. M&T Bank confirmed in writing on September 19, 2025, and again on October 7, 2025, that Plaintiff's application was complete and under active review. These written confirmations triggered all mandatory USDA servicing requirements.

62. Despite confirming completeness, M&T Bank failed to conduct the required waterfall evaluation, failed to calculate Plaintiff's 31-percent eligibility, and failed to review Plaintiff for any USDA disaster-relief or modification option. Each failure violated explicit federal servicing rules and deprived Plaintiff of relief available under the program.

63. After acknowledging completeness, M&T Bank issued duplicative requests for documents already submitted. These contradictory communications unlawfully delayed the review process and violated USDA rules prohibiting the "resetting" of a complete application through repeat document demands.

64. M&T Bank engaged in prohibited dual-tracking by threatening foreclosure and demanding more than $9,000 while Plaintiff's complete application was under active review. Such conduct violates 7 C.F.R. § 3555.307, USDA Handbook HB-1-3555, and the federal prohibition on foreclosure activity during an active loss-mitigation review.

65. M&T Bank failed to issue the mandatory written determination identifying the specific relief options evaluated and the reasons for any denial. This failure violated USDA's explicit written-notice requirements and prevented Plaintiff from understanding the basis of the servicer's actions or seeking timely appeal.

66. M&T Bank's conduct was not a clerical error or isolated oversight. Rather, it constituted a pattern of systemic noncompliance with mandatory federal servicing standards, including: contradictory statements about application status, refusal to evaluate required options, unlawful foreclosure threats, and failure to issue the required written decision.

67. As a direct and foreseeable consequence of these violations, Plaintiff's delinquency increased, Plaintiff's credit deteriorated, Plaintiff incurred additional financial hardship, and Plaintiff was exposed to wrongful foreclosure during a period when federal law expressly prohibited any foreclosure activity.

68. Plaintiff is entitled to monetary damages, equitable relief, and an order compelling M&T Bank to comply with federal servicing requirements, correct all inaccurate servicing

records, and remedy the harms caused by its violations of 7 C.F.R. § 3555.307 and USDA Handbook HB-1-3555.

## COUNT V — AGENCY ACTION THAT IS ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR OTHERWISE NOT IN ACCORDANCE WITH LAW
*(Administrative Procedure Act, 5 U.S.C. § 706(2))* **(Against USDA Rural Development)**

69. Plaintiff realleges and incorporates by reference Paragraphs 1 through 68 as if fully set forth herein.

70. Under 7 C.F.R. §§ 3555.301 and 3555.307, and USDA Handbook HB-1-3555, Chapter 18, USDA is required to supervise servicer compliance with mandatory federal loss-mitigation requirements, ensure accurate servicing records, prevent unlawful withdrawal classifications, and require corrective action when a servicer violates federal law. These duties are nondiscretionary and binding.

71. USDA acted arbitrarily and capriciously by ignoring clear evidence that M&T Bank violated multiple mandatory federal servicing rules, including falsely asserting that Plaintiff withdrew his complete application, failing to issue the mandatory written determination, repeatedly demanding documents already submitted, giving contradictory explanations for delay, and failing to complete the required loss-mitigation waterfall.

72. USDA further acted arbitrarily and capriciously by failing to require M&T Bank to correct the false "withdrawal" classification despite receiving Plaintiff's written proof that no such withdrawal ever occurred, and despite the governing regulations requiring that all loss-mitigation withdrawals must be in writing and signed by the borrower.

73. USDA acted arbitrarily and capriciously by failing to require M&T Bank to perform a compliant evaluation, to issue a written decision, to maintain accurate servicing records, or to follow any part of the mandatory regulatory framework.

74. USDA's inaction also violated 5 U.S.C. § 706(2) because the agency failed to enforce its own nondiscretionary regulations, ignored evidence of multiple federal violations, took no steps to protect Plaintiff's statutory rights, and failed to conduct even a minimal supervisory response despite repeated written notices.

75. USDA's failure to act was an abuse of discretion because the agency allowed M&T Bank to continue applying unlawful servicing practices, including dual-tracking threats and misclassification of Plaintiff's application status, without performing the supervisory functions federal law requires.

76. USDA's conduct was not the product of reasoned decision-making, was contrary to the plain text of the governing regulations, and violated the APA's prohibition on arbitrary and capricious agency action.

77. As a direct and foreseeable result of USDA's arbitrary and capricious actions, Plaintiff suffered ongoing and compounding harm, including increased delinquency, deterioration of credit, financial instability, emotional distress, and exposure to foreclosure proceedings based on inaccurate and uncorrected servicing records.

**COUNT VI — IMPERMISSIBLE FORECLOSURE THREAT DURING ACTIVE LOSS-MITIGATION REVIEW** *(APA § 706(1), APA § 706(2), and 12 C.F.R. § 1024.41(f)–(g))*
(Against USDA Rural Development)

78. Plaintiff realleges and incorporates by reference Paragraphs 1 through 77 as if fully set forth herein.

79. Under 12 C.F.R. § 1024.41(f)–(g), a servicer is strictly prohibited from initiating, advancing, or threatening foreclosure while a borrower's complete loss-mitigation application is pending. This protection is mandatory, applies automatically, and does not depend on servicer discretion or internal policy.

80. USDA Rural Development is required under 7 C.F.R. §§ 3555.301, 3555.307, and USDA Handbook HB-1-3555 Chapter 18 to ensure that servicers comply with all federal loss-mitigation requirements, including the prohibition on foreclosure activity during active review. These supervisory duties are nondiscretionary and require USDA to intervene when a servicer violates borrower protections.

81. On October 7, 2025, M&T Bank issued a written notice confirming that Plaintiff had submitted a complete loss-mitigation application and that review was ongoing. In the same communication, M&T Bank stated that unless Plaintiff paid approximately $9,000, "foreclosure proceedings may begin." Because Plaintiff's application was complete, this written threat constituted an illegal dual-tracking violation in direct contravention of 12 C.F.R. § 1024.41(f)–(g) and USDA servicing rules.

82. Plaintiff promptly notified USDA of the unlawful foreclosure threat and provided USDA with the written evidence of M&T Bank's dual-tracking violation. Despite this notice, USDA took no corrective action. USDA did not order M&T Bank to retract the threat, did not instruct the servicer to halt foreclosure-related communications, and did not require correction of the servicing record.

83. USDA's failure to intervene constitutes "agency action unlawfully withheld" under 5 U.S.C. § 706(1), because USDA failed to carry out discrete, legally required supervisory duties mandated by 7 C.F.R. §§ 3555.301, 3555.307, and HB-1-3555 Chapter 18. USDA had no discretion to ignore these mandatory duties.

84. USDA's inaction was also arbitrary, capricious, and contrary to law under 5 U.S.C. § 706(2). The agency ignored clear regulatory violations, disregarded evidence showing Plaintiff's completed status, failed to apply the federal prohibition on foreclosure during active review, and permitted coercive conduct to continue unchecked.

85. USDA's refusal to enforce mandatory federal protections directly enabled M&T Bank to continue exerting unlawful foreclosure pressure while Plaintiff's application was pending. This undermined the purpose and operation of federal loss-mitigation safeguards, deprived Plaintiff of the stability required during an active review and allowed inaccurate servicing records to remain uncorrected.

86. As a direct, foreseeable, and compounding result of USDA's unlawful inaction, Plaintiff suffered concrete harm, including increased financial and emotional strain, the need to divert limited resources to address imminent foreclosure risk, the erosion of Plaintiff's ability to participate meaningfully in the loss-mitigation process, deterioration of Plaintiff's credit profile, and exposure to wrongful foreclosure while federal law expressly prohibited such activity.

## DAMAGES

87. Plaintiff realleges and incorporates by reference Paragraphs 1 through 86 as if fully set forth herein.

88. As a direct and foreseeable result of Defendants' unlawful conduct, Plaintiff suffered substantial financial, legal, and emotional harm, including increased arrears, deterioration of credit, depletion of retirement and personal savings, and exposure to foreclosure during a period when federal law prohibited such activity.

89. Plaintiff seeks all actual and statutory damages permitted by law, including losses directly caused by M&T Bank's servicing violations and USDA's failure to perform nondiscretionary supervisory duties. These damages include both financial harm and compensable emotional distress recognized under RESPA and the APA.

## ECONOMIC DAMAGES

90. Plaintiff suffered significant and compounding financial harm as a direct result of Defendants' conduct. M&T Bank's repeated delays, contradictory document demands, and failure to issue a written determination caused Plaintiff's arrears to increase solely because the servicer refused to evaluate a complete loss-mitigation application. But for M&T Bank's violations of 12 C.F.R. §§ 1024.40–1024.41 and USDA servicing rules, Plaintiff would not have incurred the delinquency or related financial consequences.

91. Defendants knowingly received information establishing Plaintiff as a fixed-income borrower—primarily dependent on Social Security and retirement income—making timely and accurate review essential. Despite this, M&T Bank's delay and USDA's failure to intervene forced Plaintiff to deplete retirement savings, liquidate essential assets, use credit to cover expenses, and divert funds toward improper delinquency and foreclosure threats. These harms were the natural, probable, and foreseeable result of Defendants' regulatory violations.

92. The financial losses Plaintiff sustained—including increased arrears, improper negative credit reporting, heightened interest costs, the erosion of retirement security, and out-of-pocket expenses associated with correcting inaccurate servicing records—were directly caused by Defendants' failure to follow mandatory federal servicing procedures. These damages continue to accrue as long as Defendants' violations remain uncorrected.

**EMOTIONAL DISTRESS DAMAGES**

93. Plaintiff also suffered substantial emotional harm as a direct result of Defendants' conduct. Plaintiff is seventy years old, lives alone, and has a significant cardiac condition. The unlawful foreclosure threats issued during an active loss-mitigation review—combined with USDA's refusal to stop those violations—created severe psychological distress, including fear, anxiety, sleep disruption, and the constant threat of losing his home.

94. Courts recognize emotional-distress damages under RESPA and the APA when a servicer's violations foreseeably cause substantial stress, particularly where the borrower's age, health, and financial vulnerability magnify the harm. Defendants knew or should have known that their conduct would have a profound emotional impact given Plaintiff's documented circumstance. These injuries are significant, ongoing, and directly attributable to Defendants' misconduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

A. A declaration that M&T Bank violated the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, Regulation X (12 C.F.R. §§ 1024.40–1024.41), and USDA servicing rules by failing to properly evaluate Plaintiff's complete loss-mitigation application, by issuing contradictory and false statements, by engaging in prohibited dual-tracking, and by failing to maintain accurate servicing records.

B. A declaration that USDA Rural Development unlawfully withheld mandatory agency action required under 5 U.S.C. § 706(1) and acted arbitrarily and capriciously under 5 U.S.C. § 706(2) by failing to enforce federal servicing obligations, failing to ensure compliance with 7 C.F.R. §§ 3555.301–3555.307, and failing to intervene despite clear evidence of regulatory violations.

C. An order compelling USDA Rural Development to perform its nondiscretionary supervisory duties under 7 C.F.R. §§ 3555.301 and 3555.307 and USDA Handbook HB-1-3555, including oversight of servicer compliance, correction of inaccurate servicing records, and enforcement of the loss-mitigation requirements.

D. Compensatory damages against M&T Bank under 12 U.S.C. § 2605(f), including all actual damages sustained as a result of improper servicing, servicer-created delinquency,

  foreclosure-related misconduct, and all economic and emotional-distress damages proven at trial.

E. Statutory damages under 12 U.S.C. § 2605(f)(1)(B) for M&T Bank's pattern or practice of noncompliance with RESPA and Regulation X.

F. Equitable relief restoring Plaintiff to the financial position he would have occupied absent Defendants' misconduct, including correction of servicing records, removal of improper delinquency reporting, recalculation of Plaintiff's account consistent with federal law, and all other equitable remedies necessary to prevent further harm.

G. Reasonable attorneys' fees and costs where permitted by statute, including under 12 U.S.C. § 2605(f) and the Administrative Procedure Act.

H. Such other and further relief as the Court deems just, equitable, and proper.

## CONCLUSION

Plaintiff has demonstrated that M&T Bank repeatedly violated mandatory federal mortgage-servicing requirements under RESPA, Regulation X, and the USDA Guaranteed Loan Program, and that USDA Rural Development unlawfully withheld the supervisory action required to prevent and correct these violations. Together, Defendants' conduct forced Plaintiff deeper into delinquency, exposed him to unlawful foreclosure pressure, deteriorated his financial stability, and caused significant emotional and economic harm.

Federal law does not permit a servicer to ignore a complete loss-mitigation application, to falsely classify it as withdrawn, or to threaten foreclosure during an active review. Nor does the Administrative Procedure Act permit USDA to disregard clear statutory duties designed to protect borrowers like Plaintiff.

For these reasons, and for the factual and legal grounds set forth in this Complaint, Plaintiff respectfully requests that the Court grant all relief requested in the Prayer for Relief, compel USDA to perform its nondiscretionary duties, require M&T Bank to comply with federal servicing law, and award Plaintiff the full measure of damages and equitable relief allowed by statute.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable, including Plaintiff's claims for actual damages, statutory damages, and emotional distress damages against M&T Bank under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, and 12 C.F.R. §§ 1024.40–1024.41.

...

Respectfully submitted,

*[signature]*

Wendell D. Cooper
117 Palm Springs Way
Simpsonville, South Carolina 29681
Telephone: (864) 230-7049
Email: wendelldoncooper@yahoo.com
Plaintiff, Pro Se

Date: 12-12-25

18